IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILLY SCHOPPE AND | § | |
| CANDACE MARIE SCHOPPE, | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | CASE NO. 17-CV-2099-S-BK |
| | § | |
| SPECIALIZED LOAN SERVICING, LLC | § | |
| AND DEUTSCHE BANK NATIONAL | § | |
| TRUST COMPANY, | § | |
| DEFENDANTS. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the District Judge's *Order Referring Case*, Doc. 57, this civil action has been referred to the undersigned for pretrial management, including issuing findings and a recommended disposition on dispositive motions. Now before the Court is *Defendants' Motion for Summary Judgment*. Doc. 61. For the reasons that follow, the motion should be **GRANTED**.

**I. PROCEDURAL HISTORY**

In August 2017, Plaintiffs filed this complaint seeking to avoid the foreclosure of their home (the "Property") by Defendants Specialized Loan Servicing, LLC ("SLS") and Deutsche Bank National Trust Company ("Deutsche") (collectively, "Defendants"). Doc. 1. They are suing Defendants for (1) breach of contract for (a) charging Plaintiffs more than $30,000.00 in "regular monthly payments" and (b) asserting amounts due that were incorrect and excessive; (2) common law usury; and (3) "tortious indifference."[1] Doc. 1 at 13-20. In due course, Defendants filed the instant summary judgment motion. Doc. 61.

---

[1] After unsuccessfully litigating three other lawsuits relating to the Property as well as a bankruptcy proceeding, Plaintiffs filed this, their fourth action. Doc. 62 at 9-11. In response to Defendants'

## II.  APPLICABLE LAW

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is "genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587.

## III.  FACTUAL SUPPORT FOR SUMMARY JUDGMENT MOTION

In support of their motion, Defendants have submitted documents demonstrating the following undisputed facts. In February 2005, Plaintiff Billy W. Schoppe ("Mr. Schoppe") executed a Texas security instrument for a home equity loan (the "Loan") in the amount of $910,000.00 based on the equity in the Property. Doc. 63-1 at 7-10. The Loan is secured by a Texas Home Equity Security Instrument (the "Security Instrument") signed by both Mr. Schoppe and his wife, Plaintiff Candace M. Schoppe ("Ms. Schoppe"). Doc. 63-1 at 12-25. The Security Instrument provides that

---

summary judgment motion, which raised the specter of res judicata and collateral estoppel, Doc. 62 at 15-17, Plaintiffs abandoned the remainder of the claims in their complaint, Doc. 65 at 14-16. Accordingly, the Court only addresses Plaintiff's remaining claims.

the beneficiary thereof is entitled to a lien on the Property, which can be foreclosed upon in the event the Loan goes into default. Doc. 63-1 at 17-18. Plaintiffs made payments on the Loan until November 2008, at which point they defaulted and also stopped paying for insurance and taxes on the Property. Doc. 63-1 at 4-5 (Decl. of Cynthia Wallace).

As sole factual support for Plaintiffs' claims, Ms. Schoppe has submitted an affidavit in which she avers, in relevant part, that (1) Plaintiffs have not made the required payments on the Loan since October 2008; (2) from May through December 2016, Plaintiffs received monthly statements from SLS seeking excessive payments of $30,064.22, which is 5.44 times greater than their established monthly Loan payment of $5,529.26; (3) the interest rate on the Loan is 6.125 percent; (4) in early 2017, SLS informed Plaintiffs that the Property was going to be foreclosed upon; (5) Ms. Schoppe filed for bankruptcy protection to avoid the foreclosure; (6) in December 2018, the bankruptcy judge confirmed the bankruptcy plan (the "Plan")[2]; and (7) from January through the date of Plaintiffs' response in June 2019, all monthly payments of $8,053.13 due under the Plan have been made. Doc. 66 at 6-11.

## IV. ARGUMENT AND ANALYSIS

### A. Breach of Contract

Defendants argue that they are entitled to summary judgment on Plaintiffs' breach of contract claim because, among other reasons, Plaintiffs breached their own contractual agreements by defaulting on the Loan, and they also cannot show any damages. Doc. 62 at 18-19.

Plaintiffs respond that they are in compliance with the terms of the Loan because they made payments from 2005 through 2008 and, again, from January through June of 2019. Doc. 65 at 17.

---

[2] Although the parties mention the bankruptcy plan throughout their briefs, the Court takes no position regarding their respective rights or duties under any such plan, as it is not necessary to the determination of Defendant's motion for summary judgment.

They argue that Defendants are not in compliance with the Loan's terms because, in 2016, they began charging Plaintiffs excessive monthly payments of more than $30,000.00. Doc. 65 at 17-18. Plaintiffs also seem to suggest that they have suffered damages in the form of their monthly Plan payments. Doc. 65 at 17.

Defendants reply that Plaintiffs (1) have effectively conceded that they have been in breach since November 2008; (2) have submitted no evidence regarding the Plan or their payments thereunder; (3) admit that they voluntarily entered into the Plan; and (4) are barred by judicial estoppel from complaining about the Plan. Doc. 67 at 5-7.

Under Texas law, to plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co*., 335 F.3d 453, 465 (5th Cir. 2003).

Upon consideration of the parties' pleadings, the summary judgment briefs, and the law, the Court agrees with Defendants for essentially the reasons they posit in their opening brief. Plaintiffs admit that they entirely stopped making payments on the Loan in November 2008. In doing so, they breached the terms of the Loan and Security Instrument. Even if Defendants allegedly violated the terms of the parties' agreement in 2016 by demanding "excessive" monthly payments, that does not excuse Plaintiffs' by then eight-year-long breach. Moreover, the fact that Plaintiffs may have made payments under the Plan in 2019 has nothing to do with the breach at issue now, which occurred eleven years earlier. In the same vein, Plaintiffs do not explain how the damages they allegedly suffered when they filed this action in 2017 relate to their payments under the Plan, which was not even confirmed until December 2018. In short, Plaintiffs' breach of contract claim fails. *Sport Supply*, 335 F.3d at 465.

4

**B. Common Law Usury**

*1. Economic-Loss Doctrine*

Defendants first assert that Plaintiffs' usury claim is barred by the economic-loss doctrine. Doc. 62 at 17-18. Plaintiffs argue in conclusory fashion that it does not. Doc. 65 at 14.

On this point, Plaintiffs are correct. The economic-loss doctrine "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). If, however, a defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties," tort damages are not foreclosed. *Sw. Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). As an initial matter, usury is not a tort. *Harned v. E-Z Finance Co.,* 254 S.W.2d 81, 86 (Tex. 1953) (holding that the attempted collection of usurious interest is not a tort); *Dryden v. City Nat. Bank of Laredo*, 666 S.W.2d 213, 218 (Tex. App.--San Antonio 1984) (holding that usury is not "a tort in the ordinary sense."). However, a claim for usury can be grounded in any number of vehicles aside from a contract, rendering the economic-loss rule inapplicable on that basis as well. *See Danziger v. San Jacinto Sav. Ass'n*, 732 S.W.2d 300, 304 (Tex. 1987) (holding that "a usurious charge may be contained in an invoice, a letter, a ledger sheet, or other book or document," and the form thereof "is immaterial except as an evidentiary fact").

*2. Notice of Usury Claim*

Defendants next argue that Plaintiffs did not provide them with the required 60 days' statutory notice before filing this action. Doc. 62 at 20 (citing TEX. FIN. CODE § 305.006). Plaintiffs respond, somewhat curiously, that they gave the required notice of their claim by filing this lawsuit. Doc. 65 at 19.

5

While the parties apparently agree that there is a "notice" component to Plaintiffs' claim, the undersigned will not impose that requirement in the common law usury context as it appears to be limited to usury claims brought under the Texas Finance Code.  See *In re Kemper*, 263 B.R. 773, 784 (Bankr. E.D. Tex. 2001) (holding that the 60-day notice requirement "is a prerequisite to the receipt of liability protection offered by" the Texas usury statute).

### 3.  Payment of Usurious Amounts

Defendants next argue that Plaintiffs have not demonstrated, as required, that they actually paid the allegedly usurious amounts.  Doc. 62 at 20.  Plaintiffs respond, rather nonsensically, that they have "suffered damages" as a result of the usurious interest because they have made payments under the Plan.  Doc. 65 at 19.

A common law usurious transaction is composed of three elements: (1) a loan of money; (2) an absolute obligation of the borrower to repay the principal; and (3) the exaction of a greater interest rate than allowed by law for the use of the money by the borrower.  *Ranzy v. Extra Cash of Tx., Inc.*, No. H-09-3334, 2011 WL 6719881, at *3 (S.D. Tex. Dec. 21, 2011) (citation omitted).  With respect to the third prong, contrary to Defendants' argument, it is immaterial whether Plaintiffs have made payments on the usurious loan.  *Danziger*, 732 S.W.2d at 304 (holding that payment of the loan is not necessary to an action based upon claims of usurious interest).

### 4.  Interest Rate

Finally, Defendants contend that because Plaintiffs did not specify the usurious interest rate or describe how it exceeded the legally permissible rate, they have not demonstrated that Defendants exacted a "greater compensation than allowed by the law for the use of the money."  Doc. 62 at 20. Plaintiffs respond that, by charging them more than $30,000.00 per month from May through

6

December 2016, Defendants applied an interest rate in excess of 40 percent, which is far more than the 6.125 percent due under the Loan.  Doc. 65 at 18-19.

To defeat summary judgment on their usury claim, Plaintiffs must present evidence that Defendants charged them a higher interest rate than is legally permitted.  *Ranzy*, 2011 WL 6719881, at *3; *see also McCray v. Hoag*, 372 S.W.3d 237, 241 (Tex. App.—Dallas 2012) (holding that plaintiffs had not met the third usury element for purposes of overcoming summary judgment motion when they failed to adequately support their calculation of monetary damages with sufficient evidence).

As noted above, Plaintiffs' only evidence is Ms. Schoppe's affidavit (1) attesting to the amount of the allegedly excessive monthly payment demanded, $30,064.22; (2) stating that this amount is 5.44 times greater than Plaintiffs' monthly Loan payment of $5,529.26; and (3) noting that the interest rate on the Loan is 6.125 percent.  Plaintiffs, however, submitted no documentation, such as billing statements, letters or anything else, to substantiate those figures.  A self-serving affidavit such as Ms. Schoppe's is insufficient to defeat summary judgment.  *Koerner v. CMR Const. & Roofing, LLC*, 910 F.3d 221, 227 (5th Cir. 2018) (holding that "[s]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment," and "a vague or conclusory affidavit [without more] is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence.") (citation omitted) (quotations in original).  Plaintiffs have not presented sufficient summary judgment evidence relating to their usury claim; therefore, Defendants are entitled to summary judgment.

## C.  Tortious Indifference

Lastly, Defendants move for summary judgment on Plaintiffs' "tortious indifference" claim, construing it as a claim for negligence or gross negligence and arguing for summary dismissal.  Doc.

7

62 at 20 n.69, 20-22. The Court, however, declines to give Plaintiffs' counseled complaint such a broad reading. *Cf. Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (stating that a document filed by a *pro se* party must be liberally construed and held to less stringent standards than formal pleadings drafted by attorneys). When Defendants pointed out in their motion that there is no such cause of action as "tortious indifference," Plaintiffs did not take the opportunity to clarify the nature of the claim, instead reframing it as one for "conscious indifference," Doc. 65 at 24, which also is not a separate cause of action in Texas. Consequently, Defendants are entitled to summary dismissal.

## V.  CONCLUSION

For the reasons stated above, the undersigned recommends that Defendants' *Motion for Summary Judgment*, Doc. 61, be **GRANTED**.

**SO RECOMMENDED** on October 28, 2019.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's findings, conclusions and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).