IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILLY SCHOPPE AND CANDACE MARIE SCHOPPE, § § § | | |
| PLAINTIFFS, | § § | |
| v. | § § | CASE NO. 17-CV-2099-S-BK |
| SPECIALIZED LOAN SERVICING, LLC AND DEUTSCHE BANK NATIONAL TRUST COMPANY, | § § § § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the District Judge's *Order Referring Case*, Doc. 57, this cause has been referred to the undersigned for pretrial management. Now before the Court are Plaintiffs' *Motion for Partial Summary Judgment*, Doc. 116, and Defendants' *Motion for Summary Judgment on Plaintiffs' Usury Claim*, Doc. 112. For the reasons that follow, Plaintiffs' motion should be **DENIED**, and Defendants' motion should be **GRANTED**.

**I. PROCEDURAL HISTORY**

In August 2017, Plaintiffs filed this complaint seeking to avoid the foreclosure of their home (the "Property") by Defendants Specialized Loan Servicing, LLC ("SLS") and Deutsche Bank National Trust Company ("Deutsche") (collectively, "Defendants"). Doc. 1. Consequently, they sued Defendants for (1) breach of contract for (a) charging Plaintiffs more than $30,000.00 in "regular monthly payments" and (b) asserting amounts due that were incorrect and excessive; (2) common law usury; and (3) "tortious indifference."[1] Doc. 1 at 13-20. After initially denying

---

[1] After unsuccessfully litigating several other lawsuits relating to the Property as well as a bankruptcy proceeding, Plaintiffs filed this, their fourth action. Doc. 62 at 9-11. In response to Defendants'

1

Defendants' motion for summary judgment on Plaintiffs' usury claim, the district judge noted that additional discovery had taken place and ordered the parties to file dispositive motions on any remaining issues.  Doc. 106.  The parties' cross-motions followed.

## II.  APPLICABLE LAW

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  A dispute regarding a material fact is "genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587.

## III.  FACTUAL SUPPORT FOR SUMMARY JUDGMENT MOTION

In support of their motion, Defendants have submitted documents demonstrating the following undisputed facts:  In February 2005, Plaintiff Billy W. Schoppe ("Mr. Schoppe") executed a Texas security instrument for a home equity refinance loan (the "Loan" or the "Note") in the amount of $910,000.00, bearing interest at a fixed annual rate of 6.125 percent with monthly

---

summary judgment motion, which raised the specter of res judicata and collateral estoppel, Doc. 62 at 15-17, Plaintiffs abandoned the remainder of the claims in their complaint, Doc. 65 at 14-16.

payments of $5,529.26.  Doc. 114-2 at 2-5.  Mr. Schoppe and the lender at the time also signed an Escrow Waiver Agreement, which stipulated that the lender waived its escrow account requirement on the condition that Mr. Schoppe agreed to pay taxes, insurance premiums, and related expenses. Doc. 114-3.  The Loan is secured by a Texas Home Equity Security Instrument (the "Security Instrument") signed by both Mr. Schoppe and his wife, Plaintiff Candace M. Schoppe ("Ms. Schoppe").  Doc. 114-7 at 2-24.  The Security Instrument provides that the beneficiary thereof is entitled to a lien on the Property, which could be foreclosed upon in the event the Loan went into default.  Doc. 114-7 at 7-8.  The Security Instrument further specified that any amounts the lender disbursed in connection therewith would "become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." Doc. 114-7 at 8.

 Mr. Schoppe made payments on the Loan until November 2008 when he defaulted and also stopped paying for insurance and taxes on the Property.  Doc. 114-1 at 4-5, 7 (Decl. of Cynthia Wallace).  After SLS took over servicing of the Loan, it sent a letter to Mr. Schoppe informing him that as of December 1, 2015, the amount owed on the Loan was $1,556,364.60 which was comprised of (1) unpaid principal of $868,601.47; (2) uncollected interest of $381,280.14; (3) escrow balance/advances of $279,446.86; and (4) outstanding fees of $27,036.13.  Doc. 114-5.  The Loan payment history also demonstrated the imposition of a lender-placed escrow account.  Doc. 114-4 at 31; Doc. 114-6.  As of April 2022, the unpaid escrow balance on the Loan was $476,459.02 and is comprised of the payments made for property taxes and insurance premiums from March 11, 2009 through December 21, 2021.  Doc. 114-1 at 5 (Decl. of Cynthia Wallace); Doc. 114-6.

 Mr. Schoppe submitted documentation in support of his motion reflecting that:  Up through January 2016, the monthly Loan statements from SLS showed a regular monthly payment due of

$5,529.26 and an escrow balance of $-272,400.86. Doc. 116-1 at 25. The February 2016 monthly Loan statement increased the monthly payment to $32,065.11 and reflected the same negative escrow balance. Doc. 116-1 at 27. The February Loan statement delineated the charges as follows:

| | |
|---|---|
| **Principal** | $1,715.12 |
| **Interest** | $3,814.14 |
| **Escrow** | $26,535.85 |
| **Regular Monthly Payment** | $32,065.11 |
| **Past Due Amounts** | $490,111.91 |
| **Total Amount Due** | $522,177.02 |

Doc. 116-1 at 27. Subsequent Loan statements reflect similar amounts due, with the escrow balance continuing to show as $-272,400.86, Doc. 116-1 at 29-37, until September 2016 when the escrow balance is listed as $-288,128.86 due to a disbursement for hazard insurance for $15,728.00. Doc. 116-1 at 41-43. Thereafter, the Loan statements reflected an increasing negative escrow balance as SLS continued to make disbursements for taxes and insurance. Doc. 116-1 at 44-60.

Additionally, Ms. Schoppe submitted a Declaration and supporting documents purporting to establish that Defendants charged Mr. Schoppe interest on the Loan in excess of 18 percent. *See* Doc. 116-1 at 19-23, 63-65. Defendants filed a *Motion to Strike Plaintiffs' Summary Judgment Evidence*, requesting, *inter alia*, that the Court strike from the record (1) Ms. Schoppe's averments in that regard on the basis that those facts are disputed, and (2) Ms. Schoppe's mathematical calculations as lacking in foundation and inadmissible lay and/or expert testimony. Doc. 122 at 2-4. The Court finds Defendants' motion is well-taken and, granting it, has thus not considered these materials.[2]

---

[2] Conversely, the Court overrules Plaintiffs' objections to the Declaration of Cynthia Wallace, Second Assistant Vice President for SLS, because Wallace's statements about the Loan are based on SLS's

## IV. ARGUMENT AND ANALYSIS

### A. Ms. Schoppe's Standing

Defendants first assert that Ms. Schoppe lacks standing to bring a usury claim because she is not a signatory on the Note. Doc. 113 at 16. Plaintiffs respond that Ms. Schoppe is an obligor on the Note because (1) the Security Instrument names her as a "Borrower"; (2) in February 2009, Deutsch's predecessor-in-interest executed and recorded an Assignment of Note and Deed of Trust, identifying the "makers" of the Note and Deed of Trust as both Plaintiffs; and (3) Plaintiffs have made more than $320,000.00 in payments to SLS since the approval of Ms. Schoppe's Chapter 13 bankruptcy plan.[3] Doc. 120 at 12-16.

Upon consideration, the Court agrees with Defendants that Ms. Schoppe is not an obligor for purposes of a claim for usury. *See, e.g.*, *W. Bank-Downtown v. Carline*, 757 S.W.2d 111, 115 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (holding that limited guarantors of promissory note were not "immediate parties" to the transaction and thus could not pursue a usury claim as it is personal to the initial obligor); *see also* TEX. FIN. CODE § 305.001 ("A creditor who contracts for, charges, or receives interest that is greater than the amount authorized by this subtitle in connection with a transaction for personal, family, or household use is liable *to the obligor*.") (emphasis supplied); *Houston Sash & Door Co., Inc. v. Heaner*, 577 S.W.2d 217, 222 (Tex. 1979) (holding "to the obligor" statutory language demonstrates that usury claims remains personal to the debtor as

---

authenticated business records and her personal knowledge of how such records are kept and maintained. *See* Doc. 125 at 3-4; FED. R EVID. 1006 (permitting the use of "a summary, chart or calculation to prove the content of voluminous writings" that "cannot be conveniently examined in court.").

[3] While Plaintiffs additionally claim Ms. Schoppe has demonstrated a concrete, particularized injury for standing purposes due to Defendants' request for foreclosure, Doc. 120 at 14-15, Defendants respond that they do not have an operational counterclaim for judicial foreclosure, Doc. 125 at 2. Plaintiffs' argument in this respect is thus moot.

usury statute is penal in nature and must be strictly construed). Accordingly, only Mr. Schoppe may pursue a usury claim, and Defendants are entitled to summary judgment on Ms. Schoppe's claim.

### B. Whether Mr. Schoppe's Usury Claim is Premature

Defendants next argue that Plaintiffs did not provide them with the statutorily required 60 days' notice before filing this action. Doc. 113 at 17 (citing TEX. FIN. CODE § 305.006(b) (providing that "no later than the 61st day before the date an obligor files a suit seeking penalties for a transaction in which a creditor has contracted for, charged, or received a usurious interest, the obligor shall give the creditor written notice stating in reasonable detail the nature and amount of the violation."). Plaintiffs, however, explicitly abandoned their statutory usury claim and Mr. Schoppe is only pursuing a common law usury claim. *See* Doc. 65 at 15. Moreover, the Court previously declined to impose a notice requirement in the common law usury context as it appears to be limited to statutory usury claims. *Schoppe v. Specialized Loan Servicing, LLC*, 3:17-CV-2099-S-BK, 2020 WL 1129969, at *3 (N.D. Tex. Mar. 9, 2020) (Scholer, J.).

### C. Common Law Usury

Defendants next point to the lack of any evidence indicating that they contracted for, charged or received a usurious amount of interest from Mr. Schoppe. Doc. 113 at 17-18. Nevertheless, they rely at least partly on Texas' usury statute which is no longer a live claim as noted *supra*. *See, e.g.*, Doc. 113 at 17-18 ("Because usury statutes are penal in nature, they should be strictly construed."). The Court thus limits its discussion to Mr. Schoppe's common law claim.

Texas authorizes a maximum interest rate of 18%. TEX. FIN. CODE 303.009(a); *Bernie's Custom Coach of Tx., Inc. v. Small Bus. Admin.*, 987 F.2d 1195, 1197 (5th Cir. 1993); *see also* TEX. PROP. CODE § 28.004 ("An unpaid amount [of a loan] bears interest at the rate of 1½ percent each month."). "Interest" is "compensation for the use, forbearance, or detention of money" and "usurious interest" is "interest that exceeds the applicable maximum amount allowed by law." TEX. FIN. CODE

§ 301.002(a)(4), (17). The elements of a usury claim are: "(1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004) (quoting *First Bank v. Tony's Tortilla Factory*, 877 S.W.2d 285, 287 (Tex. 1994)).

A lender can violate usury law by charging a borrower fees which constitute "disguised interest." *Id.* at 439. Whether a particular fee is disguised interest depends on the substance of the transaction. *Id.* If the fee is supported by "separate and additional consideration apart from the lending of money [, it] is not interest and cannot be the basis of usury" *Id.* (quoting *Tex. Commerce Bank-Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex. 1984)). Under Texas law, there is a specific presumption against a finding of that interest is usurious. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 290 (5th Cir. 1995) (citation omitted). Moreover, courts have held that escrow payments do not constitute interest because the funds are collected and held in an escrow account for payment to third parties for property taxes and insurance premiums on behalf of the property owner. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1207-08 (5th Cir. 1985).

To defeat summary judgment on his usury claim, Mr. Schoppe must present evidence that Defendants charged him a higher interest rate than is legally permitted. *Ranzy v. Extra Cash of Tex., Inc.*, No., H-09-3334, 2011 WL 6719881, at *3 (S.D. Tex. Dec. 21, 2011); *see also McCray v. Hoag*, 372 S.W.3d 237, 241 (Tex. App.—Dallas 2012) (holding that plaintiffs had not met the third usury element for purposes of overcoming summary judgment motion when they failed to adequately support their calculation of monetary damages with sufficient evidence). Although Mr. Schoppe suggests that the escrow balance on the Loan is "disguised interest," he has not submitted any admissible supporting evidence.

On the other hand, Defendants' summary judgment evidence supports its position with authenticated evidence. The Security Instrument expressly authorizes Defendants to pay taxes and

7

insurance premiums if necessary and specifies any payments so made would become Mr. Schoppe's contractual debt. Doc. 114-7 at 5-6, 8. Defendants (or their predecessors) thus made payments to third parties for property taxes and insurance premiums when Mr. Schoppe failed to do so. Doc. 114-6 at 2-3. According to SLS's business records, the unpaid escrow balance on the Loan was $476,459.02 as of April 2022. Doc. 114-4; Doc. 114-6 at 2. That balance is comprised of the payments made by SLS or its predecessors for property taxes and insurance premiums from March 11, 2009 through December 21, 2021. Doc. 114-6 at 2-3. SLS's Escrow Account Breakdown and Loan Payment History detail each such payment. Doc. 123-1 at 18-48; Doc. 123-1 at 61-2. These payments thereby became Mr. Schoppe's debt owed under the Loan as is reflected on the monthly mortgage statements. Doc. 114-7 at 8.

Further, the Security Instrument permits SLS to estimate the amount of future escrow payments based on current data and reasonable estimates of future expenditures to determine the amount of Mr. Schoppe's monthly escrow contribution. Doc. 114-7 at 5 ("Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law."). In the event of a negative escrow balance, the Security Instrument requires payment to SLS of the amount necessary to make up the shortage over the course of 12 months. Doc. 114-7 at 5; *see also* 12 U.S.C. §§ 2609(a)(2), (b) (providing that if a lender determines there will be or is a deficiency in a borrower's escrow account, the lender may require the borrower, upon notice, to make additional monthly deposits into the escrow account to avoid or eliminate such deficiency). Accordingly, SLS calculated the escrow shortage payment to ensure no escrow shortage would exist after 12 payments and added that figure to the monthly mortgage statements. *See* Doc. 123-1 at 4-11 (Decl. of Cynthia Wallace); Doc. 123-1 at 50-59. In so doing, SLS complied with the terms of the Security Instrument and 12 U.S.C. § 2609. Defendants are thus entitled to summary judgment on Mr. Schoppe's common law usury claim.

## V.  CONCLUSION

For the reasons stated above, Plaintiffs' *Motion for Partial Summary Judgment*, Doc. 116, should be **DENIED**, and Defendants' *Motion for Summary Judgment on Plaintiffs' Usury Claim*, Doc. 112, should be **GRANTED**.  This case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on September 16, 2022.

*[signature]*

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).